RULING
On September 9, 10, and 13, 1999, a consolidated trial took place in this court on the motion of the Department of Children and Families (DCF) for an order of temporary custody (OTC) and on the underlying neglect petition. For the reasons stated below, CT Page 12578 the court vacates the OTC and, with some precautionary comments, denies the neglect petition.
I. THE OTC
The gravamen of the OTC application is the claim that the mother, Dana A., beat her ten year old daughter, Shaina A., with a belt or flexible stick on her arms and neck and possibly pushed Shaina into a wall or a washing machine. Allegedly, this incident occurred on August 24, 1999, while Shaina was in a day care arrangement supervised by, and at the home of, Paulinea K., a fourteen year old friend. Also in the home at the time were the fourteen year old's eleven and eight year old siblings. DCF claims that the mother beat Shaina in an episode of excessive discipline when the mother stopped by the house at midday to check on Shaina's compliance with the mother's schedule for the day.
There is no dispute that on August 24, 1999, Shaina had numerous fresh red streaks on her upper arms and posterior thighs as well as fresh bruises on her wrist and arm. These streaks and bruises were consistent with being struck by a belt with a buckle. The critical dispute is whether the mother inflicted these marks — a finding that would compel the conclusion that Shaina would be in immediate physical danger if returned home — or whether the children did so.
The court has concluded that the preponderance of the evidence does not establish that the mother beat her daughter. The main factors relied upon in reaching this conclusion are: the fact that Shaina has a history of lying, including lying about discipline imposed by the mother, the fact that Shaina has not repeated her original allegation that her mother beat her on August 24, 1999, the fact that the children in the K. household had engaged in rough play, the fact that Shaina and Paulinea tried to conceal the ownership and whereabouts of a belt belonging to Paulinea's sister that apparently caused the injuries, and the overall credibility of the mother and her lay witnesses. For these reasons, the OTC is vacated.
II. NEGLECT
The primary basis of the original neglect petition was the claim that, on September 15, 1998, the mother hit Shaina on her back with a television antenna because Shaina had allegedly made CT Page 12579 unnecessary complaints to her school that she was not feeling good. On October 9, 1998, Judge Harleston conducted a contested hearing on the OTC obtained in conjunction with the neglect petition and essentially concluded that the evidence did not substantiate DCF's claim. Having reviewed the October 9 transcript and heard many of the same witnesses in the present hearing, this court reaches the same conclusion as Judge Harleston concerning the September, 1998 allegations.
On or about September 2, 1999, the court granted DCF's motion to amend the neglect petition by incorporating the affidavits filed along with the more recent OTC. Insofar as these affidavits focus on the August 24, 1999 incident, this court's finding that the preponderance of the evidence does not establish the mother's direct responsibility for this incident — disposes of the amended allegations in the neglect petition as well. Although one paragraph of the affidavit of DCF social worker Deana Miranda also alleges that the mother has failed to cooperate fully with DCF and had not continued with counseling sessions, these allegations seem to be more background information than an independent basis for the amended neglect petition. In any event, to the extent that the evidence supports these allegations, they do not rise to the level of neglect without more convincing proof that the mother has disciplined her daughter with instruments.[2]
Numerous aspects of this case remain very troubling. Under any view of the evidence, there are significant strains in the relationship between Dana A. and her daughter. The parties have not addressed this problem adequately. In her 1998 ruling, Judge Harleston stated that "I think it's important for this child to have an individual counselor that she can talk to, that she knows mom is not talking to, no one else is talking to, this is her counselor, and a family therapist that both [Dana and Shaina] could see." The parties did not comply with this sound recommendation. The preliminary "specific" steps entered after the 1998 hearing did not specifically call for individual therapy for Shaina. DCF supplied the mother a list of counseling clinics, from which list the mother selected a clinic that provided a psychiatric social worker who individually and jointly counseled both Dana and Shaina. Neither the mother, who has been represented by counsel throughout, nor DCF, which noted in a status report that the therapist, after many months, has not "spoken about [the] issue that led [the] child to be removed," attempted to change this unsatisfactory arrangement. CT Page 12580
Second, Judge Harleston ordered a psychological evaluation, presumably of both the mother and Shaina. This evaluation never took place. The preliminary specific steps did not mention it. On November 28, 1998, an evaluation of both did take place by Dr. Janet E. Williams, who is a psychiatrist. While Dr. Williams impressed the court as a highly competent psychiatrist, she herself recommended at the latest hearing that testing and evaluation be conducted by a psychologist.[3] On April 12, 1999, Judge Harleston granted DCF's motion for a psychological evaluation. This court is not aware of why the parties did not comply with this court order.
The mother has her own needs for counseling. Crediting her testimony about her strict but not physical disciplinary style, this approach seems perfectly acceptable in the abstract. The problem is that it may not be working with Shaina. The testimony established that Shaina has experienced the loss of a number of relatives and friends. It may be that the mother needs to scale back her heavy work schedule to spend more time with Shaina. The mother, while within her rights to refuse to allow DCF to talk to service providers or to let school social workers work with Shaina, would probably benefit by being more cooperative. Finally, the mother's decision to leave Shaina in a full day babysitting arrangement supervised by a fourteen year old, while perhaps the result of a temporary need, was an exercise in poor judgment.
This court strongly recommends that Dana place her daughter in individual therapy, continue with her own counseling, and obtain a complete psychological evaluation. Failure to do so, after having been ordered by one judge and recommended by a second, may well support further DCF intervention in the family's life. Failure to do so may also lead to more allegations of abuse that will surely precipitate further state action against either the mother or Shaina. The court also urges the mother voluntarily to cooperate with DCF in any way that it may be able to assist.[4]
III. CONCLUSION
For the foregoing reasons, the OTC is vacated, the neglect petition is denied, and DCF is ordered to return Shaina to her mother's custody forthwith. CT Page 12581
It is so ordered.
Carl J. Schuman Judge, Superior Court